UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEESHA KARRIEM, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 2572 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| GENERAL SERVICES ADMINISTRATION and | ) | |
| TIM HORNE, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Keesha Karriem sued her employer, the General Services Administration, and its

administrator, Tim Horne (together, "GSA"), under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.*, alleging that she was denied a promotion due to her race, religion, and

sex and in retaliation for filing administrative charges of discrimination. Doc. 7. GSA moves

for summary judgment. Doc. 43. The motion is granted.

**Background**

The following facts are set forth as favorably to Karriem, the non-movant, as the record

and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893

(7th Cir. 2018). On summary judgment, the court must assume the truth of those facts, but does

not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

Karriem, an African-American, Muslim woman, is a marketing communications project

manager for the Federal Acquisition Service, a division of GSA. Doc. 46 at ¶¶ 1-2. In 2008, she

filed an administrative race discrimination charge after Chris Lundstrom, her second-line

supervisor, selected a white woman instead of her for an advanced leadership program and

promotion. *Id.* at ¶¶ 3-4. In 2009, Karriem filed a second race discrimination charge after

receiving a three-out-of-five rating on her 2009 annual performance review. *Id*. at ¶ 6. Although the second charge listed Lundstrom as the responsible official, Lundstrom's colleague had prepared the evaluation with only preliminary input from Lundstrom. *Id*. at ¶ 7. In 2011, GSA and Karriem settled both charges, along with a third charge involving wage discrimination. *Id*. at ¶¶ 5, 8. GSA agreed as part of the settlement to change Karriem's 2009 rating from three to four, but did not admit that the initial rating was discriminatory. *Ibid*.

Lundstrom gave Karriem a three-out-of-five rating on her 2011 performance review. *Id*. at ¶ 9. Of the employees Lundstrom rated that year, one African-American employee received a two, four African-American and three white employees received a three, and four white employees received a four. *Id*. at ¶¶ 9, 61. Karriem challenged her rating in a January 24, 2012 discrimination charge against Lundstrom. Doc. 45-10 at ¶ 1; Doc. 46 at ¶ 9. GSA agreed in a November 2014 settlement to change the rating from three to four, again without admitting that the initial rating was discriminatory. Doc. 46 at ¶¶ 9-10.

In April 2012, while the latest charge remained pending, GSA posted a vacancy announcement for a supervisory marketing communications project manager. *Id*. at ¶ 11. GSA's human resources department ("HR") received applications, screened and ranked them, and referred the best candidates to Lundstrom, who was charged with filling the position. *Id*. at ¶¶ 11, 13. Karriem applied, and HR recommended that she and five other candidates be interviewed. *Id*. at ¶¶ 23, 27. Before receiving the list of recommended candidates, Lundstrom chose three GSA employees to conduct first-round interviews. *Id*. at ¶¶ 14-15, 17-18. Among those employees was Kurt Regep, Lundstrom's long-time co-worker and mentor. *Id*. at ¶¶ 14-16, 45. Lundstrom did not discuss Karriem or the other applicants with Regep or the other interview panel members prior to the interviews, with the exception of discussing "in general

terms" two of Karriem's administrative discrimination charges with Regep years earlier in 2009 or 2010. *Id.* at ¶¶ 22, 45; Doc. 49 at ¶ 62.

The panel conducted first-round interviews on May 23 and 24, 2012. Doc. 46 at ¶¶ 23-24. Regep learned ahead of time that Karriem would be interviewed. Doc. 49 at ¶ 62. The panel was instructed to ask each candidate the same questions in the same order and to independently grade each answer on a four-point scale. Doc. 46 at ¶ 21. Once an interview concluded, the panel members discussed each answer and decided on a consensus score, then tallied all the consensus scores to arrive at a total consensus score. *Id.* at ¶¶ 25-26. Regep, the "lead panel member," was charged with explaining the interview process to the candidates and preparing a final report, but each panel member's scores carried equal weight. *Id.* at ¶ 26.

Karriem received the lowest total consensus score, while two white men received the highest scores. *Id.* at ¶¶ 27-28. In a letter to Lundstrom, the panel explained that Karriem scored the lowest because she "provided basic examples and many times did not answer the question." Doc. 45-16 at 5; Doc. 46 at ¶ 32. The panel recommended that only the top two scorers advance in the hiring process. Doc. 46 at ¶ 29. Lundstrom accepted the panel's recommendation and, after second-round interviews, chose Michael Kraynak to fill the position. *Id.* at ¶ 33. Karriem testified at her deposition that she believed she was more qualified than Kraynak given their relative contracting and marketing experience and familiarity with the department. *Id.* at ¶ 53.

The panel members' notes from Karriem's interview are in the record. Doc. 46-1. The notes are illegible in many places. The following are excerpts from the notes, to the extent they are legible (question marks in brackets indicate the court's uncertainty about a word):

> [Question 4] As a leader within an organization, you must often build support for goals and projects from people who do not report to you and over whom you have no authority. Describe an occasion when you facilitated cooperation

and motivated team members to accomplish the group's goals and the action you took.

[Regep's notes]  [Illegible.]  She has to go to her peers – "Platinum Rule" – treat others the way that they want to be treated.  [Illegible.]  Try to get deadlines set.

[Panel member Ronnie Redmond's notes]  Peers are customers[?].  All business[?] have ads to place and there are deadlines.  "Treat others they want to be treated."

[Panel member Joy Walker's notes]  Platinum Rule – Treat others they want to be treated.

*Id*. at 4, 12, 20.

[Question 6]  You were just selected for this position and during your third week of employment, an employee comes to you complaining about one of their co-workers.  They indicate that this employee is taking long lunches, always on the phone with friends, using the government PC inappropriately, and leaves early when you (the boss) is not in the office for the day.  How do you handle this?

[Regep's notes]  Supervisors are psychologists.  All[?] personalities/behaviors.  Would go to Chris for her recommendation – [Illegible] – She[?] isn't familiar so she would ask for help – Take advice into consideration.

[Redmond's notes]  Supv are like psychologist.  Consults with supervisor/mgr.  [Illegible] is asking for help.

[Walker's notes]  Supv. – physocoligist (sic).  Deal w/ different personality/behaviors.  Go to Chris and ask what she would recommend – Ask for help.  Take her advice in consideration.

*Id*. at 5, 13, 21.

[Question 9]  What are three examples of the kinds of behaviors, actions, or attitudes you are most likely to conflict with at work?  Can you give us an example of a situation you addressed in the past?  How was it resolved?

[Regep's notes]  Try not to have conflicts – "hard one."  (1) Negativity (2) Violent (3) Disrespectful.  Whether going[?] on personally or at work, need to be professional.  Try to calm person down.  If not call [illegible].

[Redmond's notes]  Negative/Violence/Disrespect.  Has not had a (sic) issue currently.  Approach would be to meet with the person.

> [Walker's notes]  Negativity – Violence – Disrespectful.  Have not run into this.

*Id*. at 6, 14, 22.  Regep did not independently score Karriem's answers to five of the ten questions asked (Questions 4, 6, 7, 9, and 10), instead listing only the panel's consensus score.  Doc. 46 at ¶¶ 25, 49; Doc. 46-1 at 4-7.  Regep did not independently score some answers for two other candidates, at least one of whom was white and had no history of filing discrimination charges.  Doc. 46 at ¶¶ 28, 49.

In September 2012, Karriem filed an administrative charge based on GSA's failure to promote her to supervisory marketing communications project manager.  *Id*. at ¶ 38.  Administrative proceedings resolved in GSA's favor in January 2017.  *Id*. at ¶ 39.  Karriem filed this lawsuit in April 2017.  *Id*. at ¶ 40.

## Discussion

Title VII's discrimination provision makes it "unlawful … for an employer … to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII's retaliation provision "prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice."  *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing 42 U.S.C. § 2000e-3(a)).  Karriem alleges that GSA promoted Kraynak rather than her to the supervisory marketing communications project manager position due to race, sex, and religious discrimination, and also in retaliation for her four prior discrimination charges.

## I.    Religious and Sex Discrimination Claims

GSA moves for summary judgment on the religious and sex discrimination claims, arguing that Karriem does not adduce evidence sufficient to create a genuine factual dispute as to

whether there was a causal connection between those protected characteristics and GSA's decision not to promote her. Doc. 44 at 11-15. Karriem does not respond to this argument, and in fact does not even mention the religious or sex discrimination claims in her opposition brief. She has thus forfeited those claims. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Keck Garrett & Assocs. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("Nextel specifically requested summary judgment on the quantum meruit claim. Keck Garrett, however, did not defend that claim in its reply to Nextel's motion for summary judgment. By failing to present its argument to the district court, Keck Garrett abandoned its claim."); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment."); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [an argument] in his brief opposing summary judgment, [the plaintiff] lost the opportunity to urge it in both the district court and this court."), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).

## II.     Race Discrimination and Retaliation Claims

GSA also moves for summary judgment on Karriem's race discrimination and retaliation claims. Doc. 44 at 10-15. Under the framework set forth in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), a Title VII claim survives summary judgment if the plaintiff presents evidence that, considered as a whole, would allow a reasonable jury to find that her protected characteristic or activity caused the adverse employment action. To meet that burden, the plaintiff may rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ortiz*, 834 F.3d at 765-66. In the failure-to-promote context,

that framework requires the plaintiff to adduce evidence showing that she belonged to a protected class or engaged in protected conduct, that she was qualified for the position, that she was rejected for the position, that the person promoted was not a member of her protected class or did not engage in protected conduct, and, if the defendant articulates a reasonable nondiscriminatory and nonretaliatory alternative explanation for the failure to promote, that the proffered alternative explanation is a pretext. *See Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 783 (7th Cir. 2007). The *McDonnell Douglas* framework is just one way the record can enable a reasonable juror to find discrimination. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (noting that *McDonnell Douglas* provides "a common, but not exclusive, method of establishing a triable issue of intentional discrimination"). A court therefore must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question whether "a reasonable factfinder [could] conclude that … [a] proscribed factor caused the … adverse employment action." *Ortiz*, 834 F.3d at 765.

Karriem refers to both the *McDonnell Douglas* framework and the general causation standard in defending her race discrimination and retaliation claims. Doc. 47 at 8-11. The court therefore will "begin [its] assessment of the evidence by employing [the *McDonnell Douglas*] construct and addressing first whether [Karriem] has established" a genuine dispute under that framework. If not, the court will then "assess cumulatively all the evidence" on which she relies "to determine whether it permits a reasonable factfinder to determine" that she did not receive a promotion because of her race or in retaliation for protected activity. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *see also Knapp v. Evgeros, Inc.*, 205 F. Supp. 3d 946, 957 (N.D. Ill. 2016). Because Karriem makes similar arguments in

defending her race discrimination and retaliation claims, the court will discuss those claims together.

The parties' dispute under the *McDonnell Douglas* framework is narrow. GSA does not contest that Karriem has made out a prima facie case of discrimination and retaliation. Doc. 44 at 13-15; Doc. 48 at 3-6. Karriem does not dispute that GSA has met its burden of putting forward a nondiscriminatory and nonretaliatory explanation for failing to promote her—that "she scored the lowest out of all the candidates at the end of the first-round interview process by a panel that did not include the alleged discriminator [i.e., Lundstrom], and she was not recommended for a second-round interview by the panel." Doc. 44 at 14 (emphasis omitted). The parties disagree only about whether GSA's explanation is a pretext offered to conceal a discriminatory and/or retaliatory motive for not promoting her.

To meet her burden of rebutting GSA's reason for not promoting her, Karriem "must identify such weaknesses, implausibilities, inconsistencies, or contradictions in [GSA's] asserted reasons that a reasonable person could find them unworthy of credence." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 724 (7th Cir. 2018) (internal quotation marks and brackets omitted). "Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 743-44 (7th Cir. 2011) (alterations and internal quotation marks omitted), *overruled on other grounds by Ortiz*, 834 F.3d at 764-65. Karriem attempts to meet her burden by pointing to four "example[s] of [GSA's] dishonesty" during the promotion process. Doc. 47 at 8-9. None supports a reasonable inference of pretext.

First, Karriem contends that Lundstrom's assertion that she did not discuss the first-round interviewees with the panel members, Doc. 46 at ¶ 22, conflicts with record evidence showing

that (1) Regep knew that he would be interviewing Karriem prior to the interview and (2) Regep and Lundstrom discussed two of Karriem's administrative charges. Doc. 47 at 8-9; Doc. 49 at ¶ 62. Contrary to Karriem's submission, there is no conflict and thus no ground for inferring pretext. That Regep knew beforehand that he would be interviewing Karriem does not mean that *Lundstrom* gave him that information. Even if Lundstrom had told Regep that Karriem would be interviewed, it would not follow that she said anything more about Karriem or the other candidates. And while Lundstrom told Regep about two of Karriem's administrative charges, those conversations took place in 2009 or 2010, Doc. 49 at ¶ 62—at least two years before Karriem applied for the position—and thus cannot fairly be characterized as discussing the candidates who were to be interviewed. *See Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 631 (7th Cir. 2018) (holding that a jury could not infer pretext from two employer statements that were "not mutually exclusive[; b]oth could be true without violating the principle of non-contradiction").

Second, Karriem maintains that while the panel's letter to Lundstrom stated that Karriem scored lower than other applicants because "many times [she] did not answer the question," Doc. 46 at ¶ 32, the panel members' notes reflect that she in fact answered each question. Doc. 47 at 9. This argument fails for two reasons. As an initial matter, Karriem simply asserts that she gave an answer to each question, without assisting the court in deciphering the notes or explaining how any of her answers were responsive to "*the* question" the panel members asked. Doc. 46 at ¶ 32 (emphasis added); Doc. 47 at 9. Thus, the argument is underdeveloped and thereby forfeited. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived … ."); *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district

court found, the musical diversity argument was forfeited because it was perfunctory and underdeveloped."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Even putting forfeiture aside, the panel members' notes (to the extent they can be deciphered) reflect that while Karriem said things in response to each question, she did not always answer the question asked—or, at least, a jury could not reasonably decide based on the notes that the panel's criticism of her responses was "a lie" rather than merely "inaccurate or unfair." *Skiba*, 884 F.3d at 724. For example, the notes for Question 4 do not reflect that Karriem described "an occasion" when she motivated others; instead, she appears to have responded with general principles like "treat others the way they want to be treated." Doc. 46-1 at 4, 12, 20. The notes for Question 6, which asked "how [she would] handle" a hypothetical situation, show that Karriem laid out general principles (for example, that supervisors are like psychologists) and then said she would ask Lundstrom for advice. *Id.* at 5, 13, 21. An interviewer could justifiably conclude that Karriem's answer—that she would ask someone else how to handle the management problem—was not responsive to the question, which asked how *she* would handle the problem. And while Question 9 asked the applicants to describe a past work conflict and its resolution, the notes show that Karriem said she had never faced a work conflict. *Id.* at 6, 14, 22. Given what can be deciphered from the notes, no reasonable jury could conclude that the interviewers' criticisms of or conclusions regarding Karriem's responses are "unworthy of credence." *Skiba*, 884 F.3d at 724; *see also Nicholson v. City of Peoria*, 860 F.3d

520, 524 (7th Cir. 2017) (refusing to "second-guess the defendants' hiring decision" in a Title VII retaliation case where the defendants' view of the candidates' interview performances was not "without factual basis or … completely unreasonable"); *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1014 (7th Cir. 2004) (holding, based on an interview transcript, that no reasonable jury could "conclude that [the employer] did not honestly believe … that [the plaintiff] refused to answer questions about" the offense for which he was terminated); *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001) ("Even viewing the[] facts in the light most favorable to [the plaintiff], whether the interview answer was right or wrong is for [the employer] to decide, and does not demonstrate that [its] reason for failing to promote [the plaintiff] was pretextual.").

Third, Karriem observes that Lundstrom could have disregarded the panel's recommendation to give second-round interviews to only the top two scorers and offered Karriem a second-round interview. Doc. 47 at 9. This does not support an inference of pretext. There is nothing suspicious about an employer's decision to use one interview procedure when it could have used another or to adhere to its chosen procedure rather than undermining it to one candidate's benefit. *See Reynolds v. Tangherlini*, 737 F.3d 1093, 1105 (7th Cir. 2013) (holding that an employer's decision not to interview the plaintiff did not evince pretext where the decision "was consistent with the relevant provision of the collective-bargaining agreement governing the selection process" and where the plaintiff "was not treated any differently from the other candidates in this regard; in fact no one was interviewed").

Fourth, Karriem argues that Lundstrom infected the first-round interview process with "bias" in that she "[e]nsured that Ms. Karriem would not obtain the promotion by not only selecting her mentor, Mr. Regep, to lead the selection panel, but additionally informing him that Ms. Karriem had humiliated her by challenging her performance rating twice." Doc. 47 at 8, 10.

The record does not support this argument.  As an initial matter, Lundstrom selected Regep to be on the panel before HR gave her the candidate list.  Doc. 46 at ¶¶ 14-16, 45; Doc. 48 at 4, 8. Karriem has not argued or shown that Lundstrom knew at the time she selected Regep that Karriem had applied or would be interviewed for the position, so there is no basis to infer that Lundstrom's panel member selections were designed to undermine Karriem.  Moreover, Lundstrom and Regep discussed Karriem's administrative charges "in general terms" back in 2009 or 2010, at least two years before the interview process.  Doc. 46 at ¶ 45; Doc. 49 at ¶ 62. Karriem adduces no evidence showing that Regep harbored any ill will toward her as a result of that conversation, much less that any such feelings lingered through 2012.  Doc. 46 at ¶ 11; Doc. 48 at 8; *see Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 568-69 (7th Cir. 2015) (holding that "ambiguous" comments made by two administrators "long before any of the plaintiffs' terminations" did not support a reasonable inference that the administrators "picked up the mantle and intended to retaliate against plaintiffs out of loyalty to" the supervisor about whom the plaintiffs complained).  Furthermore, the record does not support Karriem's submission that Lundstrom told Regep during that conversation that Karriem had "challenged her performance rating twice," as Karriem had not challenged *any* evaluation by Lundstrom as of 2009 or 2010. It was Lundstrom's colleague, not Lundstrom, who prepared the evaluation that Karriem challenged in the 2009 charge, and Karriem did not file the charge related to the 2011 rating, which Lundstrom did prepare, until 2012.  Doc. 46 at ¶¶ 7, 11; Doc. 48 at 8.  Thus, there is no evidence from which a reasonable jury could infer that Lundstrom rigged the first-round interview process to ensure that Karriem would not receive a promotion.

In addition to the four points discussed above, Karriem notes in passing that Regep deviated from the established interview procedure by not independently scoring Karriem's

answers to five (Questions 4, 6, 7, 9, 10) of the ten questions asked. Doc. 47 at 3-4. But Karriem's brief makes no *argument* based on this fact, thereby forfeiting the point. *See M.G. Skinner*, 845 F.3d at 321; *Judge*, 612 F.3d at 557. Although Karriem's forfeiture suffices to dispose of the issue, it bears mention that Regep provided a reasonable explanation for not scoring five of Karriem's responses: He thought Karriem's answers were getting worse as the interview progressed, and he wanted to hear other panel members' thoughts to ensure he was not missing anything. Doc. 46 at ¶ 49; Doc. 48 at 8-9. In any event, while a jury might reasonably infer pretext if Regep's scoring of Karriem constituted an "unusual deviation" from, *Baines v. Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017), or an "uneven" application of, *Coleman v. Donahoe*, 667 F.3d 835, 858 (7th Cir. 2012), standard interview policy, Regep left individual scores blank for two other interviewees, including a white applicant with no history of filing discrimination charges. Doc. 46 at ¶¶ 28, 49; Doc. 48 at 9. A practice that affects three of six candidates, including an individual without protected characteristics, does not qualify as an "unusual deviation" from or "uneven" application of standard interview policy. *Baines*, 863 F.3d at 664; *Coleman*, 667 F.3d at 858.

Karriem also notes in passing that she believes she was more qualified than Kraynak, but does not address the legal significance of her belief, Doc. 47 at 5-6, thereby forfeiting any argument based on her assertion. *See M.G. Skinner*, 845 F.3d at 321; *Judge*, 612 F.3d at 557. Even putting forfeiture aside, Karriem's opinion about her and Kraynak's relative qualifications cannot, without more, defeat summary judgment. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008) ("[The plaintiff] also relies on her own assessment of [a comparator's] qualifications as against her own, but this is insufficient to show pretext."); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) ("A plaintiff's contention that he is

the better candidate for a vacancy constitutes nothing but the employee's own opinion as to his qualifications.  This cannot create an issue of material fact because an employee's perception of his own performance cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities.") (internal quotation marks, alterations, and brackets omitted); *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996) ("[The plaintiff] also stated that, in her opinion, she was more qualified for the dispatcher positions than either of the two drivers who was hired.  It is well settled, however, that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions.").

Finally, the parties' Local Rule 56.1 statements and responses debate the significance of several additional facts—specifically, that panel member Ronnie Redmond provided background testimony in an unidentified proceeding related to one of Karriem's prior discrimination charges, Doc. 46 at ¶ 46; Doc. 49 at ¶ 63; that Redmond and panel member Joy Walker crossed out and revised some of their scores without initialing their changes, while Regep did not cross out any of his scores, Doc. 46 at ¶¶ 47-48; Doc. 49 at ¶¶ 63-64, 69; that various aspects of the interview process arguably did not conform to GSA's internal interview guide or to an Office of Personnel Management guide on structured interviews, Doc. 46 at ¶¶ 48-52; that settlement negotiations concerning Karriem's January 2012 charge were ongoing in the weeks leading up to the interviews, Doc. 49 at ¶ 67; and that Karriem believes that Lundstrom never gave an African-American employee a five-out-of-five rating or a white employee a two-out-of-five rating on a performance review, *id*. at ¶ 68.  Karriem did not mention these facts anywhere in her opposition brief, thereby forfeiting any argument based on them.  *See Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 936 (7th Cir. 2017) ("A party has waived the ability to make a specific argument

for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms."); *Nichols*, 755 F.3d at 600 ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Salas*, 493 F.3d at 924 ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … ."). In sum, Karriem has not shown that a reasonable jury could find pretextual GSA's nondiscriminatory, nonretaliatory explanation for failing to promote her.

Karriem's claims fare no better when her arguments are examined through the lens of the broader question whether racial discrimination or retaliation caused GSA to deny her a promotion. As detailed above, Karriem fails to effectively counter GSA's evidence that the interview panel's recommendation caused GSA to deny her the promotion, or to adduce evidence supporting her theory that Lundstrom unduly influenced the panel.

Moreover, even if Karriem could show that Lundstrom somehow manipulated the process, she does not present evidence from which a jury could infer that Lundstrom acted from a discriminatory or retaliatory motive. Karriem argues that Lundstrom demonstrated racial bias by giving higher ratings on average to white employees than to African-American employees on their 2011 performance evaluations, and by deciding to hire a white employee, Kraynak, instead of an African-American employee as supervisory marketing communications project manager. Doc. 47 at 7. While this kind of "pattern evidence" is somewhat suggestive of discriminatory intent "even if that evidence is not rigorously statistical, … standing alone, it is insufficient evidence to withstand summary judgment." *Nichols*, 510 F.3d at 782; *see also Sun v. Bd. of*

*Trustees of Univ. of Ill.*, 473 F.3d 799, 813 (7th Cir. 2007) ("[A] questionable pattern of promotion, standing alone, is [not] sufficient evidence to withstand summary judgment."); *Baylie v. Fed. Reserve Bank of Chi.*, 476 F.3d 522, 524 (7th Cir. 2007) ("Statistical analysis is relevant in the technical sense that it has a tendency to make the existence of a material fact more probable or less probable than it would be without the evidence. But data showing a small increase in the probability of discrimination cannot by itself get [an individual] plaintiff over the more-likely-than-not threshold; it must be coupled with other evidence, which does most of the work.") (internal quotation marks, alterations, and citation omitted); *Bell v. EPA*, 232 F.3d 546, 552 (7th Cir. 2000) (holding that "in conjunction with other evidence … statistics can be probative of whether the alleged disparity is the result of discrimination," but rejecting "efforts to use statistics as the primary means of establishing discrimination in disparate treatment situations"). Moreover, the pattern evidence here is very weak, based on two isolated incidents (one year's evaluations and one hiring decision) involving few employees. Doc. 48 at 4-5. Karriem does not adduce any additional evidence of discriminatory intent, and so has not created a genuine dispute as to whether Lundstrom failed to promote her because of her race.

Nor could a jury infer that Lundstrom acted from a retaliatory motive. Karriem urges the court to infer retaliation from the provisions of the 2011 and 2014 settlement agreements changing her 2009 and 2011 ratings from three to four. Doc. 46 at ¶¶ 8-10. Karriem submits that "any supervisor would have felt angry and humiliated" to know that an employee had "successfully challeng[ed] her performance rating twice," and "likely would have wanted to retaliate when an opportunity occurred." Doc. 47 at 10. The court will disregard Karriem's contentions about how Lundstrom felt or reacted at the summary judgment stage because Karriem offers no evidence to support them. *See Boss v. Castro*, 816 F.3d 910, 916 (7th Cir.

2016) ("We construe all inferences in the non-movant's favor, but [s]he is not entitled to the benefit of inferences that are supported only by speculation or conjecture.").  Moreover, Karriem is wrong on the facts—she had not *successfully* challenged any of *Lundstrom's* ratings at the time the promotion decision was made in 2012.  Lundstrom's colleague, not Lundstrom, gave Karriem the rating changed in the 2011 settlement agreement, and Karriem succeeded in challenging Lundstrom's 2011 performance rating in 2014, well after the promotion decision at issue here had been made.  Doc. 46 at ¶¶ 7, 9-10; Doc. 48 at 7.

Karriem also contends that retaliation can be inferred based on the timing of the promotion decision, which took place while her fourth administrative charge was pending.  Doc. 47 at 10.  "[W]here there is corroborating evidence of retaliatory motive, an interval of a few weeks or even months" between the protected activity and the employment action "may provide probative evidence of the required causal nexus." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016).  But "[s]uspicious timing alone is rarely enough to create an inference of retaliatory motive." *Ibid*.  Here, four months elapsed from the time Karriem filed her fourth administrative charge on January 24, 2012 to the time she interviewed for the promotion on May 23 or 24.  Doc. 45-10 at ¶ 1; Doc. 46 at ¶¶ 9, 23-24.  That delay is too long to support an inference of retaliation where, as here, there is no other evidence indicating a retaliatory motive. *See Seymour-Reed v. Forest Pres. Dist. of DuPage Cnty.*, __ F. App'x __, 2018 WL 4944826, at *4 (7th Cir. Oct. 12, 2018) ("The four months between the last protected activity and the adverse action is not close enough to carry the day.  Because [the plaintiff] provides no other circumstantial evidence of causation, a reasonable jury could not find that he was discharged in retaliation for engaging in activity protected under Title VII.") (citations omitted); *Silk v. Bd. of Trustees*, 795 F.3d 698, 710 (7th Cir. 2015) (same, for a delay of "a few

weeks"); *Fabiyi v. McDonald's Corp.*, 595 F. App'x 621, 626 (7th Cir. 2014) ("[I]ntervals of three, five, and seven months between [the plaintiff's] complaints and the alleged retaliation do not alone create a material issue of fact about whether [the plaintiff's] complaints were the cause."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (same, for five-week and two-month intervals); *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) ("Although [suspicious timing alone may be enough] when the adverse action occurs on the heels of protected activity, … [t]his can hardly be said to be the case here, where … months separated the alleged protected activity and adverse action.") (internal citations and quotation marks omitted); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) ("Here, more than four months elapsed between the time that [the plaintiff] filed his complaint with the EEOC and his firing. This court has held a temporal connection of four months failed to establish a causal connection between a protected activity and an adverse action.") (collecting cases); *Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001) ("[T]he length of time between the protected speech and the adverse employment action is at least four months, which, without more, is too long to support a reasonable inference of causation.").

On this record, no reasonable jury could find that Karriem's race or prior administrative charges, rather than the panel's nondiscriminatory and nonretaliatory recommendation, caused GSA to choose another employee for the supervisory marketing communications project manager position. GSA is therefore entitled to summary judgment on the race discrimination and retaliation claims.

**Conclusion**

For the foregoing reasons, GSA's summary judgment motion is granted. With all claims

having been resolved, judgment will be entered against Karriem and in favor of GSA.

November 27, 2018

_____
United States District Judge